The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, we will begin an argument today and I think Mr. Lawrenson, you're up initially. Yes, Your Honor. May it please the Court, my name is Will Lawrenson. Here with me in this room is my colleague, Corey Palumbo. We are here on behalf of the appellants. West Virginia has one of the most effective, if not the most effective, childhood immunization law in the country. This court has already upheld its constitutionality, finding that it does not infringe upon the religious freedoms of those who oppose vaccination for religious reasons. And since this court entered that decision in 2011, there has been a rising chorus of unanimous courts of appeals authority upholding similar vaccine requirements in other states. The district court below went the other way and preliminarily enjoined the enforcement of West Virginia's vaccine law as applied to a student enrolled in a virtual learning program. We submit that this is a legal error and we ask this court to reverse that injunction. Our first question, counsel, is what standard are we going to use? The district court applied strict scrutiny. I assume you're arguing for a rational basis? That's correct, Your Honor. We submit that this is a rational basis case under the United States, under the Employment Division of Oregon v. Smith case. The Supreme Court, since at least 1990, has held that states are free to legislate even in manners that may burden religious exercise, so long as that legislation is neutral and generally applicable. There have been a number of separate opinions and concurring opinions that have taken some issue with Smith and everything. And so the argument before us is that Smith is wobbly and we should give it a final shove. What do you think about that? There certainly have been concurring opinions from the Supreme Court expressing those sentiments, but Smith is the law of land from our Supreme Court. It remains precedent from the Supreme Court. The Supreme Court has not overturned Smith. And so it is the framework in which we argue about it. Let me mention to you that the opposing side in this case has said that, well, there are 45 states plus the District of Columbia that offer religious exemptions from mandatory vaccine laws. And so they're saying, hey, folks, why don't you just join the crowd and affiliate yourself with all these other states that are providing religious exemptions from mandatory vaccines here, there and yonder? What do you say in response to that? The First Amendment certainly does not compel that result, Your Honor. States are free to disagree on that issue. The states that have recognized religious exemptions to their vaccine laws have far more exemptions to their vaccine laws by orders of magnitude than our states like West Virginia that recognize medical exemptions only. So religious exemptions, they tend to cluster in particular areas. Oh, you've made that argument. It's a legitimate one, I think. But, you know, the crux of their argument is that this is an online process and that you communicable diseases don't transmit virtually. And so they're saying, well, what's the harm? Because you're not going to transmit a disease from A to B online. What's West Virginia's response to that? Our virtual students are students enrolled in virtual learning like the plaintiff are part of our school system in all material respects. They may take classes online, but they do go to go to school in person for testing on an annual basis. They're eligible for extracurricular activities. They're attended to school functions like prom and prep assemblies and whatnot. But equally importantly, your honor, our interest in protecting the health and safety of our children doesn't begin and end at the schoolhouse door. It's not something that we start caring about when the bell rings in the morning and we stop caring in the evening. An under vaccinated student attending virtual classes compromises herd immunity the same way that an in-person student would. And likewise, a student that's compliant with our vaccine schedule, although attending class. Your argument is that this this law is an exercise of a core state power under our system of dual sovereignty and under our federal system. And if there's one core state power that the Supreme Court and other courts have upheld consistently through through the decades, it is the power to protect the general health of the population. And what you're saying is that ever since Jacobson and the closing years of the 19th and early 20th century, the court has singled out. This authority to protect public health as central to a state sovereignty, is that correct? That's absolutely correct. And our Supreme Court has repeatedly held that asserted individual liberty interests like the ones asserted by plaintiffs must yield in the face of those compelling interests. They've held that consistently since 1905. Mr. Mr. Lawrenson, let me ask you, can you hear me? Yes, sir. OK, let me ask you, if I understand correctly, your statute exempts homeschooling and many, many courses and pods. What what is the justification for excluding those since you're trying to have everybody vaccinated? You've excluded those. What is the justification that the state has for that? So homeschooled children are not a part of our school system. So just for clarity, they're not exempt in the text of our vaccine law. Our vaccine law operates upon entry into our school system and homeschooled students, micro schools, learning pods are not a part of our school system. I think that those school choice initiatives of our legislature, particularly over the last couple of years, were in the name of school choice. And I think that was the legislative prerogative there. And I don't think there's anything in our First Amendment that compels the state to pursue its public health interests. No, I'm not. I'm not suggesting that. I'm just wondering why you could have legislated that all children need to be vaccinated. Couldn't you? The state of West Virginia could have done that. Yeah. And you've excluded certain groups like homeschooling children, homeschooled children. And I'm just wondering if you know what the reason is for excluding homeschooled children. I believe the legislative priority with that legislation, it was school choice. I think that was the legislative prerogative there. I'm not sure. But how does school choice relate to getting everybody vaccinated? I think the legislature there was pursuing two different interests. And I think under the state's police power, West Virginia is entitled to pursue a school choice initiative on one hand and a public health initiative on the other. Ultimately, we think the difference between homeschool environment and virtual learning environment is not one that has any First Amendment. I didn't suggest that. I wanted to know what the exception was. And I can't quite figure out why school choice provides an exception from vaccination. I mean, we're talking about a policy that is designed for what they sort of call herd immunity. And if that is the purpose, then they've excluded homeschooling and other types of schooling like that for some reason. And it seems to me, how about if somebody chose in terms of school chose chose to go to a parochial school? Why didn't they exclude those? They're not part of the public system. So private schools are a part of our school system. They're not they're not public schools. But what we have here is a compulsory school attendance. Have you compelled the children at parochial schools and private schools to be vaccinated? They do apply. The vaccine law does apply to those schools. OK, so in terms of school choice, you're suggesting that the legislature made a choice that if you chose a private school, you had to be vaccinated. But if you chose homeschooling, you didn't have to be vaccinated. I think that in terms of what the legislature did here, if we're looking at the legislature's intent, we have a mandatory school attendance law that applies, of course, to public schools. But all schools in our state are subject to that law. And if you're not complying with that law as a parent, you're subject to truancy. But that doesn't answer the vaccination question. The mandatory schooling is satisfied by homeschooling, isn't it? Correct. And that's where homeschooling comes in, is that you are exempt from the school attendance law. So I think your honor's question is, what's the public health prerogative behind homeschooling? And I think the best answer that I have to that is that homeschooling is really a different legislative initiative towards the school choice thing. I believe that's the best we have on this record. One thing, I think that it's not our job to weigh relative risks. It's obviously a balancing question and it's right at the heart of the legislative function, weighing relative risk. And that's what West Virginia has done. I think Judge Niemeyer's question was a very good one. I think your response is these are different. And also, legislatures can proceed one step at a time. They don't necessarily have to have a wholly integrated or they don't have to go at this problem, you know, 100% or nothing. They can try. We can go one step at a time and see how that goes. And if you have a situation where certain groups that were exempt nonetheless presented a risk, well, then that's what state legislatures are for, to amend the law to cover that risk. But as I see it, one of the crucial questions is, are we going to assume the state's legislative powers? And that concerns me. And it also concerns me that we may be decreeing a premature burial to the Smith decisions. One of the points you made, and I think it can't be emphasized too often, the courts of appeals and courts generally have been very reluctant to recognize free exercise exceptions to mandatory vaccination laws. And there's a pretty long line of authority that says we're not going to go down this road. And when you start saying, well, you do this or do that or do this or that, it takes very little to generate challenges from all quarters. And you can find yourself going down a road to unraveling this whole public health scheme, to unraveling the whole thing. And that's, as I say, when you're dealing with diseases such as polio and measles and mumps and everything, we ought to be a little bit careful about recognizing exceptions and exemptions and springing loose a whole series of free exercise challenges, which can really put a dent in the state's efforts to protect schoolchildren from these kinds of communicable illnesses. I think that's absolutely correct. Judge Wilkinson, it is ultimately within the state's police power to draw these lines about what the relative risks are. And I think, again, the Constitution comes into play when there's a First Amendment implication. But when we're comparing different school environments and the risks posed by homeschool children versus students enrolled in a virtual setting. An important point that Judge Niemeyer has raised about why homeschool children are exempt. And I think I want to make sure I've got your answer correct. What is it that exempts homeschool children from vaccination, but not this student in this case? This student is enrolled in our school system as a virtually enrolled student. Unlike homeschooled students, students enrolled in a virtual learning program, they go to school for testing in person. They are eligible for all extracurriculars, sporting events. They're invited to school events and they're part of our school system. I see that I've got a red light. Well, I have one more question, if I can. So I want to go back to the standard, not the application of it. But so the Supreme Court sent back the Second Circuit's decision in Miller. And said, we want you to reconsider this in light of Mahmoud. So Mahmoud resurrected Yoder after a half century of dormancy. And basically said, well, we're going to kind of skip over if Mahmoud applies the substantial burden on religious upbringing. We're going to skip over Smith and go directly to the application of strict scrutiny. So Miller, and I think there was a First Circuit case as well, both applied rational basis review. So it seems like the Supreme Court has indicated we've got to address the strict scrutiny standard issue. So how would you respond to that? I believe that the Supreme Court vacating the Second Circuit was to consider Mahmoud. I don't think it necessarily was a docket entry. I don't think that the Supreme Court's disposition tells us one way or the other. It just asks this court to consider the Mahmoud question. Ultimately, what we're looking under Mahmoud for is state action that interferes with the parent's right to direct the religious upbringing of their child. And so the question becomes, does a parent's right to direct the religious upbringing of their child, does that include withholding their child from a compulsory vaccine? We don't think it does. We think that actually the Supreme Court has told us that it doesn't, dating all the way back to Jacobson and Prince. In fact, in Prince, the Supreme Court held that the right to exercise religion freely does not include the right to kind of claim these religious liberties on behalf of your children when it comes to these communicable diseases. What is your explanation? I'm waiting for you to get to those cases. I'm sorry. You're just noting that I was waiting for the argument to get to those cases. Understood, Your Honor. And I'm happy to develop that argument further or in a rebuttal. But I see that I'm in the red. I'd like to honor the court's time. Let's hear from Mr. Wiest. Good morning, Your Honor. Chris Wiest on behalf of the appellees. Crystal and Anthony Perry on behalf of their minor daughter, KP. Let me start here. There are three separate reasons why strict scrutiny applies in this case, and we can get to strict scrutiny any of those three ways. We've got a Fulton issue here with respect to how the state processes. Well, counsel, let me kind of cut to the chase here as I see it. Let's just assume strict scrutiny applies. Well, you have two decisions, at least from the Supreme Court that would appear to be on point and say that in particularly in Prince, that was a free exercise challenge. And says the state can was certainly within its powers to compel vaccination. Why don't those cases in this case? First of all, Your Honor, let's talk about Jacobson and Prince. Jacobson was a case that never addressed strict scrutiny. Jacobson was a rational basis case in which the Supreme Court in it said we're not dealing with a fundamental right. And so Jacobson, by the way, Jacobson addressed the due process clause, did it not? Substantive due process, which is a rational basis review, Your Honor. And so Jacob, by the way, Jacobson preceded the incorporation of the free exercise clause by some 20, 30 years. And so we're not even dealing with Jacobson. The point was that Jacobson addressed a state's interest in protecting public health. And many of the cases that you're talking about and on which you rely did not address public health. They addressed the question of the infringement on parental rights to have certain to have children exposed to certain ideas and certain influences in school. But isn't that a mile away from a situation where we're talking about a state's authority to address public health concerns? So many of these cases, the interesting thing about them, whether we're talking about Yoder or whether we're talking about Mahmoud or whatever, yeah, Mahmoud or whatever, they just didn't address the question here, which is whether there is a free exercise exemption as a matter of right to a compulsory vaccination law. That hasn't been addressed in the Supreme Court has not indicated where we're talking about a health exemption that all of these other cases are applicable because they're talking about different subject matter. Well, Your Honor, let me address the public health. There is no public health exception, and we know that because we've got Tandon. Tandon arose out of California and the state of California argued in Tandon versus Newsom. Hey, there's a public health exception to the First Amendment. And the Supreme Court said, no, there's not. That's 593 U.S. 61. That's a recent case that arose in the COVID lockdown context. And so if you want to sort of parse this out, Tandon rejects the argument that there's a public health exception to the First Amendment. That dealt with two different religious groups. And it did not that case did not deal with a mandatory vaccination law. It had to do with whether you would certain groups were required to take certain protective measures in the way of mass or whatever. But it did not. There was nothing in that in that decision that you rely on that required a public health exception. I mean, a free exercise exception to the to a mandatory vaccination law. And this case that you're talking about, Tandon, didn't involve a mandatory vaccination law where the rights of parents, you say the rights of parents are implicated by this case. Well, the rights of parents are also implicated by mandatory vaccination law, and there are a lot of parents who simply do not want their children exposed to the dangers of contagion. So for polio and mumps and measles and whooping cough and chickenpox and another a number of other very serious illnesses. And there are a lot of parents that have a right there to. Your Honor, with respect, I am unaware of where that right arises in the Constitution. I am aware of a very specific enumerated right to exercise free exercise and what the free exercise clause prohibits. And Tandon makes this clear and Fulton makes this clear and Mahmoud makes this clear is that if you're dealing with and if West Virginia is going to allow exceptions to this policy, whether it's through tens of thousands of kids in micro schools or homeschooling or learning pods, if you're going to start allowing exceptions, then, yes, you've got to look at possibly allowing a religious exemption and the free exercise prohibits that sort of discrimination. And I appreciate the fact that we're dealing with a vaccination case, but there's no vaccination exception that I am aware of in the text, the First Amendment or any of the Supreme Court's jurisprudence. And if we want to get back, for instance, to Jacobson, that doesn't even mention free exercise in Prince. It's dicta because Prince was a pamphlet in case and the Supreme Court said in passing, hey, we might not allow it for vaccination. And yet we don't have the sort of allowance here that West Virginia readily allows that undermines its interest. And by the way, your honor, if you want to look, for instance, at public health cases, look at the leukemia case. Right. The city and leukemia was saying, hey, we've got an interest in protecting public health. And so we're going to allow, you know, animal slaughter under certain circumstances, but not if it's sacrifice. The First Amendment prohibits that sort of discrimination. But the problem is, I mean, I agree the First Amendment's important. Of course, it's important. But, you know, so is our system of dual sovereignty. And you simply cannot read the legislature's police powers out of the Constitution. The legislature, the legislature's police power and public health prerogatives, they're part of the Constitution, too. Your honor, ultimately, we've got a supremacy clause. And if the Bill of Rights prohibits the government from violating the First Amendment, including as it's been applicable to states in the free exercise context, then yes, then there is a First Amendment problem. And federal courts step in in that instance, whether it's a free exercise. That's right. But there's also a democratic problem and a state sovereignty problem and the rest. And the point is that we get a lot from living in society. Society confers a great deal, great many benefits upon us. But the social compact does occasionally require that people accept some curtailment of some rights for the sake of the larger public good. And the institution that determines that since time immemorial has been the legislative body. And you can say, well, this is just a minor exception, but it will unleash a torrent of free exercise, free exercise challenges to innumerable mandatory vaccination laws. This is just the first step, is it not? Let me say this, your honor. These challenges are already occurring under Supreme Court jurisprudence. And by the way, the Supreme Court made clear in Mahmoud that they're just that there's no de maximis exception to the First Amendment. Right. That's language that's taken out of my mood because the same argument came up in Mahmoud. Oh, my gosh. If you start allowing opt outs, there's going to be a whole bunch of them. And the Supreme Court said, no, that is not a valid consideration in Mahmoud. Now, certainly, I suppose this court could say, you know what, we don't care what the United States Supreme Court says on that. But Mahmoud, counsel, Mahmoud, just like Yoder, dealt with education and neither Mahmoud, unless I've missed something, neither Mahmoud, Fulton, Tandon, any of those ever addressed Prince. Now, you can argue whether or not some of the language in Prince was dicta or part of the holding. But the Supreme Court said in several places in Prince that the right to practice religion freely does not include the liberty to expose the community or the child to communicable disease. And as a lower court, aren't we bound by Prince until the Supreme Court specifically says otherwise? Your Honor, I don't for two reasons. I don't think so. First of all, it was dicta. And second of all, Tandon made clear. As a lower court, we're going to accord dicta from the Supreme Court, meaning an authority. But Your Honor, to that point, Tandon was a disease prevention case, ultimately, that came out of COVID and was clear that the state could not impose whatever it wanted from a disease prevention perspective in light of the free exercise. Well, did it ever mention Prince? It's a more recent decision, Your Honor. I don't think it has to. Not when Prince is simply dicta. Well, I think you keep referring to Prince as simply dicta. But one of the problems and difficulties that I have with your position is that you're assuming we have a lot of authority that we do not, in fact, possess. And one of the things we don't possess is we can't just topple the Employment Division versus Smith. We can't just say, well, we're going to apply the coup de grace for this and say that it's no longer an applicable precedent. And we're going to say further, in addition to interring Prince, I mean, interring Smith, that we have the authority to assign, to say to the Supreme Court and tell the Supreme Court why the wording of some of its opinions are dicta. Now, you have repeated that word, the Prince decision, and you have repeated, dismissed it as dicta at least three or four times in this argument. And that's fine for you to say. But what, you know, you're asking an intermediate appellate court to assume ultimate authority if we can just pick out language we do not like and assign it to the category of dicta. Well, with respect, Your Honor, I would suggest that that argument actually goes the other way here, because we're simply asking you to apply Fulton, to apply Tandon, get the strict scrutiny because of the exceptions conduct that West Virginia allows, or the discretionary nature of their medical exemptions that they allow under Fulton, the comparability under Tandon, and to get the strict scrutiny, or for that matter, Mahmoud. And Mahmoud is clear that if there's substantial interference with a parental right or a requirement that the state imposes that violates religious belief, that's a substantial burden, and here we have it, we're to strict scrutiny either way, either because it's not generally applicable under the Fulton or Tandon, or you avoid Smith completely under Mahmoud and you get the strict scrutiny. And then we're just simply asking you to apply Fulton and Mahmoud that talks about opt-outs that says, both of those cases say, if you're going to allow some opt-outs, that undermines any state interest and you can't satisfy strict scrutiny. I'm just simply asking you to apply three recent precedents from the United States Supreme Court not to disregard them. I mean, I think it's that simple. And on that front, you know, and we understand that sometimes exceptions, you know, make people uncomfortable, right? Exceptions in the Tandon context, you know, in the middle of COVID made people uncomfortable. It's not just, my friend, this is not just a matter of making someone uncomfortable. You're talking about parents that have children who may be exposed unnecessarily to some very serious illnesses in the absence of a vaccination. And that's more than making a parent or somebody feel uncomfortable. That makes them concerned about particularly serious diseases that might strike their children or grandchildren. And that does not belong in the category of just feeling uncomfortable. Some people might feel deeply disturbed and some people might feel deeply alarmed. Your Honor, one response I have to that is the strict scrutiny analysis looks at the government's interest and whether or not it's narrowly tailored, right? And if we have this concern about communicable diseases, then West Virginia would not be allowing tens of thousands. And we're aware that there's probably around 40,000 children that are allowed to not be vaccinated because they're homeschooled, they're in micro schools, they're in learning pods. If you're going to allow that kind of population of unvaccinated children to occur, that undermines the state's interest of, geez, we've got this really compelling interest and we're really concerned about disease prevention. You don't allow those sorts of exceptions. You don't allow adults in schools to be unvaccinated. You don't allow the public to come into sporting events and extracurricular activities. Excuse me, sir. Once again, it seems to me that you're ignoring some fundamental propositions of constitutional law. And that is that a state legislature is not required to bite off a problem whole. It can proceed one step at a time. And the reason it's important to allow a state legislator to proceed one step at a time is that empirical evidence comes back to it about what steps work and what steps do not work. And if you say to a state legislature, well, you've got to go all or nothing, then that just ignores the whole feedback proposition that experimentation and one step at a time legislation provides for legislative authority. You're just depriving the legislature of an important feedback mechanism when you disallow it from proceeding in an area like this, disallow them from proceeding one step at a time. Respectfully, Your Honor, I think that that contention runs headlong into the Tandon issue, which is that when the state allows any comparable secular activity to be treated more favorably than religious exercise, that's a 593 U.S. 61, that it violates and that it triggers strict scrutiny. And so this notion of, well, geez, they're allowed to have substantial under inclusivity and to bite this problem off a bit at a time runs headlong into the Tandon issue and triggers strict scrutiny. I'm just saying that Tandon did not involve education. This does. Tandon did not involve vaccination. This case does. Tandon did not involve the question of the fact that children are particularly at risk with in the case of mandatory vaccination. This case does. They're just, you know, four or five different four or five differences between this case and Tandon. And I just I just can't take a leap from Tandon and say, oh, well, that's precisely on point when neither education nor children nor public health in terms of mandatory vaccinations. Mandatory vaccinations were nowhere considered. We're going to allow all this on vaccination to occur in all these contexts and not say that it's not comparable secular activity. I understand what you're saying, but at the same time, when I look at an unbroken line of circuit court and lower court authority, they seem I'm still looking and looking and looking and looking. And I haven't seen the circuit case or a line of authority that has voided mandatory vaccination laws on free exercise grounds. Now, maybe, you know, you know, a number of them that I don't. But I don't think so. Well, we cited several of them in our briefing. I know the Fifth Circuit had the Navy Seals case. The Sixth Circuit had the doll case. All of those dealt with free exercise in the vaccine context. Again, Your Honor, the free exercise clause doesn't have a vaccination exception. And I, you know, and I think it was a heck of a signal by the U.S. Supreme Court to vacate the Second Circuit's decision in Miller and lighten the mood. If vaccination, Your Honor, if you were correct and there's a vaccination exception, there would not have been a vacater. We're not talking about a vaccination exception. We're talking about the ability of state law to draw reasonable distinctions or to experiment with reasonable distinctions where public health is concerned. And in that instance, there's got to be a compelling governmental interest and it's got to be narrowly tailored. And that's another problem here because narrow tailoring isn't just, hey, we've got an interest in vaccination. Supreme Court in Fulton says you've got to show a compelling governmental interest in denying an exemption to the particular claimant. Here it's an online student. And how about preventing a child from catching polio or measles or mumps or chicken pox or whooping cough? That's not a compelling interest. Protecting a child against polio doesn't have to get the salt vaccine. Well, in this instance, Your Honor, we've got a child that's received and again, this is an as-applied challenge, a child that has received all of those vaccines in a single dose. They have not necessarily received a second dose. And we've got a whole lot of non-vaccination that the state allows. So, you know, who are we? If we're protecting others, this child's home in a virtual school. And if we're talking about protecting the particular child themselves, well, the state would allow it if they would just be homeschooled or microschooled. So, again, there's substantial under-inclusivity here. And the Supreme Court says that matters in Yoder, says it matters in Mahmoud, and says it matters in Fulton. And, Your Honor, I see that I'm out of time. Well, Mr. Weiss, I just want you to know I've enjoyed our exchange. Thank you, Your Honor. You're a good guy. All right. Let's hear from Mr. Lawrence. You've got some rebuttal time, sir. Thank you, Your Honor. My opposing counsel here relies heavily on Tandon and Fulton. I'd like to emphasize that there have been five published Court of Appeals decisions since those cases that have considered free exercise challenges to vaccine requirements, considering these same arguments under Tandon, same arguments under Fulton. All five of those decisions upheld state vaccine requirements. I'm not aware of any appellate authority in the country that goes the other way on that particular question. Let me ask you a question. It seems to me a lot of your argument focuses on the fact that the state can protect the public health. And that's the primary focus. And the question in this case, it seems to me, is that the state has decided to protect the public health, but it has exempted from that certain classes of students, which would challenge the public health just as much as this particular childhood. In other words, the other 40,000 or whatever they are, people in these pods, many things, home learning, also challenge the public health. So the argument is that because exclusions are made for secular purposes, whatever they may be, choice or whatever you want to allege, the question is, can you discriminate against a class that is seeking exception because of religious beliefs and faith? And I think the issue in this case is different from the generalized vaccination cases, which I think fall a lot into what Judge Wilkinson has suggested. I think the question here that they are raising is if you're going to exempt some groups based on secular grounds, then you're going to have to honor similarly a religious ground. Otherwise, you're facing a discrimination notion in applying the statute. And this is as an applied challenge, as I understand it. It is an as applied challenge, your honor. But I would note that this comparison between virtual learning and the homeschooled environment is not actually a tandem comparison where we're observing how the state is. You know, you keep focusing on the educational aspect. The fact is, you make an exception for a large number of students and you make an exception because you say it's choice, educational choice. But if you're going to make a large exception, then all of a sudden you've broken the barrier of the notion that we want herd immunity. If you want herd immunity and you want to prevent students from having these diseases, exposing other students in the state of West Virginia, then it should be universal. And that might be a different issue altogether. But here the state has chosen to accept groups, which means it's chosen to accept the herd immunity policy. And so the question is now, if they do it for some secular reasons, which might be school choice or other physical things, then why not for a religious thing for this one student, eight year old girl who has foresworn sports and public school? She's doing the virtual learning, but she is not going to participate in extracurricular activities. I don't think we can evaluate the concept, even though this is an as applied challenge, Your Honor. I don't think we can evaluate the state's public health interests. But you made exceptions to them. Your public health interest is a powerful interest, very powerful. But now the question is a state made exceptions to it. That's the issue here. If you make exceptions and you exclude religion, but you include other reasons, then the question becomes whether you've discriminated. And again, I don't think that we have discriminated on the basis of religious exercise. In this case, we have, as our discourse, I think, is established, drawn lines in the educational settings. But but the state's free to do that. And we're not when we when we compare a student who opposes vaccination and virtual learning to a student who is in homeschool, but is not vaccinated for secular reasons. We're kind of changing multiple variables there. And the difference legally between those children is that one's in our school system and therefore the vaccine law applies. And the other one is not in our school system. That makes a difference because when someone is in the school system, they can participate in extracurricular activities. And when someone is in the school system, they can participate in sports. And so maybe it's not a choice or a line that we would have drawn. But the point is that it's it's not a nonsensical distinction to say that these particular children are because of their association with extracurriculars and sports and mingling with other children in the school activities that the state would have wanted them vaccinated. And they could have included other children. But the point is, they drew a distinction between those within the school system and those outside of it. Now, it may not suit judges as a picture-perfect distinction. And maybe we, if we were legislators, would have written the law differently. But the question is whether we want to take a step that is going to unravel mandatory vaccination laws. And we're all very familiar with the toe in the water and the foot in the door and seen it time and time again. But this is just oh, this is just this one little thing, one little applied as applied challenge. And no, it becomes a foothold to a much broader assault. And that's what that's what we're faced with. I think that's correct, Your Honor. And I see that I'm out of time unless the court would like me to address anything else further. Well, thank you. Thank you both. Normally, we come down and re-counsel. But proceeding virtually, we can't just sort of jump through and shake your hands. And Mr. Weiss, I tell people at the end of a spirited and fun kind of argument when we're meeting in person, I said, if you're mad at me, you don't have to shake my hand. But I mean, both of you, they offered able arguments. And on behalf of the court, I want to say how much we we appreciate the job that that each one of you has done. Thank you, Your Honor. I would shake your hand if I were in Richmond today. Thank you. All right, we proceed into our next case.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, G. Steven Agee